182 P.2d 105

MILLER et al. v. CONDON et ux.

No. 4866.

Supreme Court of Arizona.

July 7, 1947.

Clark & Clark, of Phœnix, for appellants.

Moore, Romley & Roca, of Phœnix, for appellees.

KELLY, Superior Judge.

Appellees were plaintiffs in the court below, and appellants were defendants. They will be so referred to herein. Plaintiffs sued upon two claims—for damages for the alleged conversion of personal property consisting of household furniture and other personal effects, and for their alleged wrongful eviction from a home. The personal property was in the home when defendants took possession of the realty, and it was crated, moved, and stored at the cost of defendants under the circumstances hereafter related and in the process some items of the personal property

were lost to plaintiffs, and substantial expenditures were entailed upon them before any of it was recovered. In addition to their actual losses they also sued for the recovery of punitive damages.

The verdict of the jury was in favor of plaintiffs in the sum of $6,417.20, and judgment was entered upon the verdict.

Though defendants established in their proofs the expenditure of a substantial sum in caring for the personal property after it was taken into possession by them, and asked recoupment therefor, this matter was withdrawn from the consideration of the jury. No instruction was given authorizing the award of exemplary damages.

Upon motion for new trial an order was made granting the motion upon the subject of damages only, conditioned upon the filing by plaintiffs of a remittit damna in the sum of $5,300. The remitter was filed, final judgment entered in the sum of $1,117.20, and new trial denied. Defendants have brought this appeal.

The principal assignment of error relied upon for a reversal is the giving of this instruction: "I instruct you that as a matter of law the defendants did not have a legal right to enter upon and take the plaintiffs' property at the time and in the manner the same were (was) taken. Therefore you are instructed that all expenses which a preponderance of the evidence shows were necessarily incurred by the plaintiffs as a direct and proximate result of having been evicted, the plaintiffs are entitled to recover."

As a corollary to this assignment it is urged by appellant that it was error to fail to instruct the jury that it might consider the claim of set-off or recoupment for the outlay, as above mentioned, of defendants.

Appellants also urge, and quite independently of the assignments already referred to, that the amount of the verdict is so disproportionate to the recovery allowed by the court as to manifest that it was given under the influence of passion and prejudice, that the remitter does not cure it of this inherent vice, and that to allow the judgment to stand in effect denies to defendants the right to a trial by an impartial jury.

It is at once seen upon an inspection of the instruction complained of that the tortious conduct of defendants in taking possession of the real and personal property involved is assumed, and in effect no function was conceded to the jury other than to assess the damages of plaintiffs. As "out of the facts the law ariseth" it is necessary to know both what the facts and the state of the controversy with respect to them were at the close of the testimony.

The facts are simple, but to set them forth for informed appraisement requires a detailed statement; and reference is had to the case of Condon et ux. v. Arizona

Housing Corp., 63 Ariz. 125, 160 P.2d 342, for details not here repeated.

On October 28, 1942, Arizona Housing Corporation was the owner of the premises designated as 2922 N. 7th Avenue, in Phoenix. On that day the owner rented the premises to plaintiffs from month to month and placed them in possession. A dispute arose between the owner and the tenants as to whether the terms of the tenancy included an option to purchase. This dispute reached the courts, and the determination was announced in the case above noticed. It has no particular relationship to the issues herein, but serves to make clear that whether as tenant or purchaser plaintiffs came lawfully into possession of the premises, which they occupied as their home. In this posture of affairs the legal owner, Arizona Housing Corporation, in February, 1943, sold its title to defendants. Very shortly the question arose between plaintiffs and defendants as to the extent of plaintiffs' interest in the premises, the plaintiffs claiming the right to purchase as an incident to their tenancy, and defendants insisting that the only rights of plaintiffs arose from their tenancy from month to month. At this phase of the controversy the parties through their counsel, as to whose powers as representatives no doubts have arisen, came to this understanding—that the monthly payments originally agreed upon should be continued by plaintiff and received by defendants without prejudice to the claims of either. The effect of this, and the mutual understanding of it by the parties, was that upon the final adjudication the plaintiffs should have the benefit of their claim that the payments should be applied, if any thereof became applicable, upon the purchase price; and correspondingly the defendants should have the benefit of their claims that all payments should be considered as rent. The monthly payments accruing were punctually made, by check, and each check was accompanied with a written statement that it was given under that condition. The checks were received by defendants, and all of them were cashed with the exception of the one received by defendants on or soon after December 1, 1943. This check was for a time retained by defendants, but was returned to plaintiffs on the last day of the same month.

During June of 1943 plaintiffs left Arizona, and for the period of their absence placed a family named Kennedy in the occupancy of the premises as their tenants or sub-tenants. The Kennedys vacated the premises, and these were thereafter unoccupied except on occasions when caretakers in the service of plaintiffs were present. After the departure of the Kennedy family defendants instituted an action in unlawful detainer against Kennedy et ux., but a final determination of that statutory action was never reached. Counsel for plaintiffs appeared in that action for the

defendants Kennedy, and in the course of the proceedings made the statement that the premises were vacant. Evidently in reliance upon that statement, though plaintiffs were not parties to that action and though the furniture of plaintiffs was still in the premises, and plaintiffs had delivered to defendants on or about the first of December the payment due on that day, whether for rent or as in part a purchase price payment, the defendants on December 22 entered the premises by the use of a key received with the deed of conveyance, and have since kept the possession. All of the personal property in the premises was tendered to the counsel for plaintiffs who arrived shortly following the entry of the defendants, for removal from the premises, but he declined so to receive it upon the contention that the possession and right of possession of the home were in plaintiffs and included the right not to be disturbed by the intervention or invasion of defendants. In the teeth of this protest defendants kept the possession of the realty thereafter; and in the course of dealing with the personal property retained and disposed of some, allowed relatives with no agency powers to take some, and had the remainder carefully boxed, moved, and stored. They further manifested their willingness to deliver to plaintiffs the warehouse receipts for the goods in storage subject to the charges of the warehouseman thereon.

All of these facts were as much disclosed by the proofs of defendants as by those offered in plaintiffs' case. There was no conflict upon them to submit to the resolution of the jury.

Appellants' brief, representing a painstaking search of the authorities and citing many opinions of unquestioned learning, advances the proposition that an owner of real property commits no tortious act in taking possession of it, if so be this can be done with no breach of the peace, from any person not having the right of possession thereto. This is a phase of the more commonly understood maxim that a man's house is his castle, and that the owner is free from all liability to trespassers except for the use of excessive force in repelling invasion. With none of those cases is there occasion for disagreement; but the principle can have no application to the forceful taking of the possession by the owner from one lawfully in possession. Upon purchasing this property the defendants had notice, or by the occupancy of plaintiffs were put upon notice, of the claims of plaintiffs. Roy & Titcomb, Inc. v. Villa, 37 Ariz. 574, 296 P. 260, and cases cited. See note 13 L.R.A.,N.S., 55. But in this case the facts are even stronger than merely to invoke the rule of notice. Defendants had not only actual knowledge of plaintiffs' occupancy, but accepted them as tenants and over a period of months received rentals from them. Plaintiffs were in no way in default. At the time of invading the possession defendants had in their hands a check representing the payment of rent to the end of the then current month. In these circumstances the rule re-

lating to the rights of an owner against trespassers or interlopers can have no application. Nor does the rule that the owner who enters upon his own property the possession of which is held by a tenant at sufferance or by a tenant whose term has expired is liable only for the excessive use of force, or for negligence in dealing with the tenant's property found therein, apply to the facts of this case. The tenant at sufferance, or the tenant whose,term has expired may not, by the great weight of authority, maintain an action against the owner upon quars clausum fregit, nor for trover for the mere setting out of the premises, using reasonable care, of the property found in the premises. Campbell v. Sutliff, 193 Wis. 370, 214 N.W. 374, 53 A.L.R. 771 and note. But in this case the tenancy was not one of sufferance, nor had the term expired. At the greatest reach of the claim of defendants during the period from their purchase of the realty to their entry the tenancy was one of month to month, with no default, and they had by their actions accepted the tender of rent for the month of December during which they re-took the possession. Cf. Section 71-304, A.C.A.1939. The entry was a trespass, and renders defendants liable for the damages proximately resulting therefrom.

■ Defendants had no right to be heard upon the set-off or recoupment clamied by them for expenses incurred in the course of their own tort. Courts will not assist a person who has committed a trespass to assert claims growing out of his own wrongful act, and the innocency or good faith which may have persuaded him into it are immaterial. A very old case, but one which still represents the law in this principle, which is so well established as to need no authority to sustain it, is that of Hobart v. Hagget, 12 Me. 67, 28 Am.Dec. 159, containing apt illustrations.

When the case reached the jury there was thus no conflict upon the facts, and no issue for them to resolve except the extent of plaintiffs' damages. It may here be said that there is ample evidence in the record to support a judgment for a sum substantially greater than that represented by the judgment; and the problem posed by the question as to whether improper considerations may have so entered into the verdict as to invalidate it must be approached with the view that upon a retrial it is exceedingly improbable that a verdict for any amount less than the judgment assailed would be reached. The probabilities are all to the contrary.

■ The verdict was held by the trial court, having an intimate knowledge of all factors, to be grossly excessive. Does the fact that it was so alone render it void? While there is great disparity in the resolution of this question in various jurisdictions, the great majority of the cases seem to concur in the view that in its essence the question is a practical one, committed to the sound discretion of the trial court, with

the object of promoting justice and not overlooking the right of the judgment creditor to have his claim liquidated and settled.

In English jurisprudence the granting of a new trial conditionally upon a remittit damna is not recognized. Watt v. Watt, 6 B.R.C. 1, 2 Ann.Cas. 672. In our federal system the rule is established that the reciprocal right of denying plaintiff a new trial conditioned upon the defendant's consenting to an increase above the jury's award does not exist. Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L. Ed. 603, 95 A.L.R. 1150 and note. Between the two extremes a wide range of power exists, as was exercised in the instant case, to grant the defendants' motion contingently upon plaintiffs' remitter and to deny it when the remitter is forthcoming. No test can be applied to the aptness of this exertion of power other than the requirement that it be wise and reasonable in the circumstances of the particular case. Philosophies may differ as to whether in any case, irrespective of the disparity between verdict and judgment, it is in some degree a denial of the right to have a jury assess the damage to allow the court to fix the top limit of a judgment less than the jury's award. But it would be asking a very high degree of perfection both of juries and of judges to require them in every case to agree exactly upon the one proper amount. If it appears manifest that the jury were actuated by prejudice or passion its verdict may not stand; but an exaggerated measurement of damages in a field in which the ideas of reasonable men may differ does not of itself lead to the conclusion that the verdict was based upon motives improper for the jury to entertain. Burdict v. Missouri Pac. Ry. Co., 123 Mo. 221, 27 S.W. 453, 26 L.R.A. 384, 45 Am.St. Rep. 528 (Cf. Notes in L.R.A. citation and in 53 A.L.R. 783); Gila Valley, G. & N. Ry. Co. v. Hall, 13 Ariz. 270, 112 P. 845.

It is obvious that a more strict scrutiny of the discretion of the trial court is due and must be applied in those cases in which the liability of the defendant is debatable than in those in which the extent only of that liability is in issue. The matter being one in which a wise discretion is reposed in the court, Southern Pac. Co. v. Tomlinson, 4 Ariz. 126, 33 P. 710, and cases cited; Gila Valley, G. & N. Ry. Co. v. Hall, supra, and it appearing that the discretion of the court was wisely exerted, that the defendants have not been prejudiced, and that the interests of justice have been preserved by bringing the controversy to a close without further litigation in a matter already fully explored, this assignment must fall.

It appearing that the judgment is fair, that the record is free from error in any wise prejudicial, it is affirmed.

STANFORD, C. J., and UDALL, J., concurring.